UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-254 |
| | § | |
| 30.00 ACRES OF LAND, MORE OR | § | |
| LESS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER & OPINION**

The Court now considers the parties' just compensation hearing.[1] Therein, the United

States of America ("United States") and Defendant Velma Flores a/k/a Velma E. Gomez

(hereafter, "Ms. Flores") appeared and presented evidence on the issue of just compensation.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This is a land condemnation case concerning 30.00 acres of land (hereafter, "Subject

Property") owned by Ms. Flores and located in Hidalgo County, Texas.[2] The United States

commenced this action in 2019, seeking to take a temporary, assignable twelve-month easement

over the Subject Property.[3] The Court granted the United States immediate possession on

January 3, 2020.[4] Therein, the Court required the United States to provide Ms. Flores with 72-

hours' notice prior to entering the Subject Property.[5] The Court also noted that the United States'

nominal just compensation estimate of $100.00 was likely insufficient given the amount of land

in this case and the length of the easement.[6] The Court ordered both parties to file just

---

[1] Minute Entry dated March 10, 2020.
[2] Dkt. No. 2-1 at 10 ("Schedule E"). The Subject Property is identified by the United States as Tract RGV-MCS-1111.
[3] *See id.*
[4] Dkt. No. 20.
[5] *Id.* at 3.
[6] *Id.*

1 / 8

compensation briefings by February 4, 2020.[7] Both parties timely filed just compensation

briefings[8] and the Court set the issue for hearing. On February 24, 2020, the United States filed a

supplemental declaration on behalf of Ms. Flores in which she amended her estimated just

compensation amount.[9]

## II. ANALYSIS

The parties appeared for a just compensation hearing on March 10, 2020.[10] Ms. Flores

contends that just compensation for the government's twelve-month easement over the Subject

Property is properly valued at $2,500.00.[11] In contrast, the United States estimates $100.00 as

nominal just compensation.[12] The Court first turns to the legal framework governing the instant

just compensation dispute, before summarizing the evidence submitted in support of each party's

estimate at the just compensation hearing.

### a. Legal Standard

In land condemnation cases, the landowner has the burden of establishing the value of the

property to be condemned.[13] Just compensation is the fair market value of the property on the

---

[7] *Id.*

[8] Dkt. Nos. 23–24.

[9] Dkt. No. 26.

[10] *See* Minute Entry dated March 10, 2020. Pursuant to Federal Rule of Civil Procedure 71.1, either party in a land condemnation case has the right to a jury trial on the issue of just compensation, should they choose to invoke that right. FED. R. CIV. P. 71(h)(1)(B) ("In an action involving eminent domain under federal law, the court tries all issues, including compensation, except when compensation must be determined: (A) by any tribunal specially constituted by a federal statute to determine compensation; or (B) if there is no such tribunal, by a jury when a party demands one within the time to answer or within any additional time the court sets, unless the court appoints a commission."). "[If] an owner's evidence is sufficient to survive [a] preliminary judicial screening, it then falls to the trier of fact to decide upon all the evidence and under proper instructions whether, and by how much, his property is enhanced because of its suitability for any of these uses." *United States v. 320.0 Acres of Land, More or Less in Monroe Cty., State of Fla.*, 605 F.2d 762 at 820. The Court notes that Ms. Flores timely requested a jury trial in her Answer. Dkt. No. 23 at 3, ¶ 7; *see also* Dkt. No. 14 at 3, ¶ 7. However, both parties agreed to submit the issue to the Court. Furthermore, because Ms. Flores' evidence is insufficient to survive the Court's preliminary judicial screening, the issue of just compensation need not fall to the trier of fact to decide.

[11] Dkt. No. 23; *see also* Dkt. No. 26-1 at 3, ¶ 7.

[12] Dkt. No. 24 at 1.

[13] *See U.S. v. 62.50 Acres*, 953 F.2d 886, 890 (5th Cir. 1992) (citing *United States ex rel. Tennessee Valley Authority v. Powelson*, 319 U.S. 266, 273 (1943)).

date of taking.[14] Fair market value entitles the owner to receive what a willing buyer would receive at the time of taking.[15] Evidence of fair market value can come in the form of comparable sales and expert testimony as to the value.[16] The more comparable a sale is, the more probative it will be of a property's fair market value.[17]

The Fifth Circuit often looks to its "highest and best use" analysis to determine the fair market value of land. Under this analysis, courts look to "the highest and most profitable use for which the property is adaptable and needed, or is likely to be needed in the near future. . ."[18] Where a landowner is trying to claim that the highest and best use for her land is something other than what the land is currently used for, the Fifth Circuit has held that the burden is on the landowner to produce credible evidence that, at the time of taking, the use claimed was "practicable" and that "there was a reasonable likelihood that [the property] would be so used in the reasonably near future."[19]

b. *Legal Analysis*

i. *Evidence Submitted by Velma Flores*

At the just compensation hearing, Ms. Flores testified as to the substance of the declaration filed in support of her just compensation brief and her supplemental declaration, which were both previously filed with the Court.[20] Ms. Flores testified that she inherited the

---

[14] *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984) (citing *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511–513 (1979)).

[15] *Id.* (citing *United States v. 564.54 Acres of Land*, 441 U.S. at 511)).

[16] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty., State of Fla.*, 605 F.2d 762, 798 (5th Cir. 1979) (noting that comparable sales "constitute the best evidence of market value.").

[17] *Id.*

[18] *United States v. Buhler*, 305 F.2d 319, 327 (5th Cir. 1962).

[19] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty., State of Fla.,* 605 F.2d 762 at 820.

[20] Dkt. Nos. 23, 26. At the hearing, the Court admitted Ms. Flores' original declaration into evidence as Defendant's Exhibit 1. Exhibit 1 indicates Ms. Flores' initial just compensation estimate of $5,000.00. The same document is currently on file with the Court as Docket No. 23-1. After filing the original declaration, Ms. Flores later supplemented her declaration prior to the hearing in order to amend her just compensation amount. Dkt. No. 26-1. At the hearing, the Court informed counsel for Ms. Flores that admitting Ms. Flores' original declaration and her supplemental declaration into evidence, in addition to having Ms. Flores testify to the content of the declarations,

Subject Property from her aunt in 2003 and that the Subject Property has been in her family for five generations. Ms. Flores also stated that the Subject Property has been used only for hunting and farming.

Ms. Flores estimates that the value of just compensation for the Subject Property is $2,500.00. Ms. Flores testified that the land was last leased by her father for white wing dove and javelina hunting approximately "twenty to twenty-five years ago." Ms. Flores further testified that her father leased the land to hunters for $5,000.00 to $10,000.00 per season.

At the hearing, Ms. Flores testified that she has not leased the Subject Property for hunting in the seventeen years she has owned the land. Ms. Flores based her $2,500.00 just compensation estimate off of an offer she claims her sister received from a local car dealership to lease the land for hunting approximately "two to three years ago."[21] Ms. Flores explained that her estimate is based on the car dealership's offer to lease the Subject Property *and* an adjacent 30-acre parcel owned by Ms. Flores' sister. Because the car dealership allegedly offered $5,000.00 to lease the 60-acre parcel for three months, Ms. Flores estimates that just compensation for the United States' easement onto the 30-acre Subject Property is valued at $2,500.00.

Noting that the instant suit was filed in 2019, the Court inquired with Ms. Flores as to whether she has taken any steps towards leasing the land since her sister received the offer from the car dealership some two to three years ago. Ms. Flores testified that approximately two years ago, after her sister received the offer from the car dealership, she invested "about $2,000.00" to

___

was unnecessary. As such, Ms. Flores testified to the amendment of her just compensation estimate and her final estimate of just compensation, $2,500.00. The supplemental declaration was not admitted into evidence at the hearing. Because Ms. Flores' testimony reflects her amendment to her just compensation estimate, the Court's Order relies exclusively on Ms. Flores' testimony at the hearing.

[21] This statement is contrary to Ms. Flores' original declaration, which states that the car dealership's offer to lease the land was received in 2019. *See* Dkt. Nos. 23-1 at 4.

clear seven acres of her thirty-acre tract in order to prepare it for white wing dove hunting. Ms. Flores stated that since making these improvements, she has not taken steps to lease the property. Ms. Flores stated that if she was to lease the land for hunting purposes, she would lease the land for white wing dove hunting, which she recalled takes place during only two weekends in the fall of each year.[22] Ms. Flores testified that she does not have any documentation supporting her assertions that her sister received an offer from a local car dealership to lease the land. Ms. Flores could not recall the name of the car dealership.

Ms. Flores also testified that the land is suitable for farming and was last farmed "more than twenty years ago." Ms. Flores stated that she has not pursued any lease for farming due to the possibility that a border wall may be placed on the land. Ms. Flores further testified that only seven acres of the Subject Property, or fourteen acres of her and her sister's 60-acre tract, is suitable for farming. Finally, Ms. Flores stated that she has not received an offer to lease the land for farming.

### ii. Evidence Submitted by the United States

At the hearing, the United States offered and the Court admitted into evidence a map of the Subject Property.[23] The United States called as a witness Jason Powell (hereafter, "Mr. Powell"), the Director of Planning and Project Execution for the Border Wall Program.[24] Mr. Powell testified to the nature of the United States' easement onto the Subject Property. In sum,

---

[22] Ms. Flores was unsure the exact dates on which white wing dove hunting occurs each year. Ms. Flores also suggested that she could potentially lease the land for other dove hunting after the close of white wing dove season.
[23] This document is marked as Government Exhibit 1.
[24] At the hearing, Ms. Flores objected to Mr. Powell's testimony on three grounds: (1) Mr. Powell was not disclosed as a witness in the parties' joint discovery/case management plan; (2) Ms. Flores was not given notice of the substance of Mr. Powell's testimony; and (3) Mr. Powell is not an appraiser capable of testifying to the value of the property, which Ms. Flores argued was the only issue before the Court. The Court overruled this objection, noting that because Ms. Flores claims she is unable to lease the property due to the nature of the United States' easement, testimony as to the nature of the easement and the United States' surveying activities on the land is relevant to the issue of whether Ms. Flores was prevented from leasing the Subject Property for her estimated just compensation amount.

Mr. Powell testified that over the course of the twelve-month easement, the United States and its contractors would, at most, enter and complete work on a particular tract of land for six to seven non-consecutive days out of the year in order to complete surveys; topographical, geotechnical, and environmental work; and an appraisal. Mr. Powell also testified that while it is feasible for the United States to survey the land while hunters are present on the property, in the event the United States was notified of the presence of hunters, the United States would likely order its contractors to exit the property. However, Mr. Powell stated that the United States typically schedules times to enter tracts of land in order to "minimize any impact [the United States] would have on [the landowner]." Mr. Powell also stated that "if there is a situation where there are specific weeks that hunting [is] happening, it is certainly not a difficult thing to say. . .[the United States is] not going to be out [on the property] in this time frame."

### iii. Court's Holding on Just Compensation

Ms. Flores testified that the Subject Property can be used for two purposes: hunting and farming. However, Ms. Flores only argues the Subject Property's fair market value as a hunting lease and offers no evidence of its value for farming. Thus, the Court will consider the land's use as a hunting lease to be its "highest and best use" for determining its fair market value.

The Court finds that Ms. Flores has not met her burden of establishing the value of the Subject Property. Ms. Flores offers only her own testimony as proof of the property's value. As the Court has noted, evidence of fair market value typically comes in the form of comparable sales and expert testimony as to the value.[25] Ms. Flores is not an appraiser and offers no documentary evidence or expert testimony in support of her contention that the property is worth $2,500.00. While this is not dispositive, the Court finds Ms. Flores' lack of evidence troubling.

---

[25] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty., State of Fla.*, 605 F.2d at 798.

Moreover, the substance of Ms. Flores' testimony is not reliable as to make it probative to the issue of just compensation. Ms. Flores bases her $2,500.00 just compensation estimate on an offer she alleges a local car dealership made to her sister. Ms. Flores stated in her declaration to the Court that the offer was made in 2019.[26] However, Ms. Flores' testimony at the just compensation hearing directly contradicted this statement, as she testified that the car dealership's offer was actually made to her sister "two to three years ago." Ms. Flores also testified that she does not know the name or location of the car dealership that made the offer to her sister, and that she has no documentary evidence to prove that the car dealership did make this offer. Thus, Ms. Flores' testimony is not reliable to make it probative to the issue of just compensation.

Finally, Ms. Flores testified that since clearing the land over two years ago, she has not taken steps to lease the land for hunting. Nonetheless, even if Ms. Flores had taken definitive steps towards securing a lease, there is no evidence on the record to definitively suggest that the United States' easement on the Subject Property precludes Ms. Flores from leasing the Subject Property for white wing dove hunting. While the presence of hunters may interfere with the United States' surveying of the Subject Property, the United States has been ordered by this Court to provide Ms. Flores with 72-hours' notice of any entry onto her property. Further, Mr. Powell testified that the United States is typically on the property anywhere from six to seven days during the twelve-month easement and Ms. Flores testified that white wing dove hunting takes place during only two weekends in the fall. It is highly unlikely, given the United States' limited use of the land at this stage of the process, that the United States' activities on the land would interfere with hunting that occurs for approximately two weekends annually. In the event that the United States' surveying does occur on these particular weekends, Mr. Powell stated that

---

[26] *See* Dkt. No. 23-1 at 4.

the United States typically works around the schedule of a landowner as to avoid interfering with the landowner's use of the land. Thus, the Court finds it unlikely that the United States' easement would interfere with Ms. Flores' ability to lease the land for white wing dove hunting, making Ms. Flores' rationale for calculating just compensation unpersuasive to the Court.

Despite Ms. Flores' failure to meet her burden, the Court finds the United States' nominal estimate of $100.00 just compensation is unacceptable considering the length of the easement and amount of land at issue in this case. Accordingly, because the Court has no viable amount of just compensation before it upon which it can rely, the Court finds a nominal amount of **$500.00** sufficient to compensate Ms. Flores for the United States' twelve-month, temporary assignable easement onto the Subject Property.

## III.    HOLDING

In light of the foregoing, the Court finds **$500.00** to be adequate just compensation. The Court hereby **ORDERS** the United States to deposit into the Registry of the Court **$500.00** for its twelve-month, temporary assignable easement onto Tract RGV-MCS-1111. The Court further **ORDERS** the parties to file dismissal documentation requesting the Court disperse the deposited just compensation by **Friday, May 15, 2020.**

Alternatively, the Court **ORDERS** the parties to appear for a status conference on **Wednesday, June 17, 2020 at 9:00 a.m.** The Court also **ORDERS** the parties to file a status report in preparation for the status conference by **June 5, 2020.**

IT IS SO ORDERED.

DONE at McAllen, Texas, this 13th day of April, 2020.

_____
Micaela Alvarez
United States District Judge